**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF TEXAS**
**MARSHALL DIVISION**

| | | |
|---|---|---|
| VINDOLOR, LLC, | § | |
| | § | |
| Plaintiff, | § | |
| | § | |
| v. | § | C.A. No. 2:18-cv-00187-JRG (RSP) |
| | § | |
| HAT WORLD, INC. D/B/A LIDS, | § | |
| | § | |
| Defendant. | § | |

**DEFENDANT HAT WORLD, INC.'S**
**MOTION TO DISMISS UNDER FED. R. CIV. P. 12(b)(6) AND 12(b)(3)**

# TABLE OF CONTENTS

I.  INTRODUCTION ...................................................................................................1

II.  STATEMENT OF ISSUES ...................................................................................2

III.  STATEMENT OF FACTS ....................................................................................2

IV.  LEGAL STANDARDS .........................................................................................4

    A.  Failure to State a Claim....................................................................................4

    B.  Improper Venue ...............................................................................................4

V.  VINDOLOR CANNOT PLAUSIBLY ALLEGE DIRECT INFRINGEMENT............5

    A.  "Use" Requires Vindolor to Prove that Hat World Both "Put the Invention into Service" and "Benefit[ted] from Each and Every Element of the Claim[s]."...........................................................................................................5

    B.  Vindolor's Complaint Does Not Plausibly Allege that Hat World "Put the Claimed System into Service" ........................................................................6

    C.  Vindolor's Complaint Fails to Plausibly Allege that Hat World Benefitted from Each and Every Element of the Claimed System.....................................9

VI.  VINDOLOR CANNOT MAINTAIN THIS LAWSUIT BASED ON ALLEGED "TESTING" BY HAT WORLD...............................................................................10

VII.  CONCLUSION.....................................................................................................12

## TABLE OF AUTHORITIES

**Cases**

*Akamai Techs. Inc. v. Limelight Networks, Inc.*,
    797 F.3d 1020 (Fed. Cir. 2015) (*en banc*) .............................................................................7

*Ashcroft v. Iqbal*,
    556 U.S. 662 (2009)................................................................................................4, 8

*Babbage Holdings, LLC v. Activision Blizzard, Inc.*,
    2:13-CV-750, 2014 WL 2115616 (E.D. Tex. May 15, 2014) ................................................12

*Ginter ex rel. Ballard v. Belcher, Prendergast & Laporte*,
    536 F.3d 439 (5th Cir. 2008) ...................................................................................5

*Bell Atl. Corp. v. Twombly*,
    550 U.S. 544 (2007)................................................................................................4, 8

*Centillion Data Sys., LLC v. Qwest Commc'ns Int'l, Inc.*,
    631 F.3d 1279 (Fed. Cir. 2011) ........................................................................ *passim*

*Global-Tech Appliances, Inc. v. SEB S.A.*,
    563 U.S. 754 (2011)................................................................................................6

*Grecia v. McDonald's Corp.*,
    No. 2017-1672, 2018 WL 1172580 (Fed. Cir. Mar. 6, 2018).........................................6, 9, 10

*Intellectual Ventures I LLC v. Motorola Mobility LLC*,
    870 F.3d 1320 (Fed. Cir. 2017)....................................................................1, 5, 6, 9

*Snyders Heart Valve LLC v. St. Jude Med. S.C., Inc.*,
    No. 4:16-CV-00812, 2018 WL 3099709 (E.D. Tex. June 25, 2018)..................................5, 11

*TC Heartland v. Kraft Foods Group Brands LLC*,
    137 S. Ct. 1514 (2017)............................................................................................10

*In re ZTE (USA) Inc.*,
    890 F.3d 1008 (Fed. Cir. 2018)................................................................................5

**Statutes**

28 U.S.C. § 1400(b) ................................................................................................2, 4, 10

28 U.S.C. § 1406(a) ................................................................................................5

35 U.S.C. § 271(a) ................................................................................................1, 5, 6

35 U.S.C. § 271(b) ................................................................................................6

**Other Authorities**

Federal Rule of Civil Procedure 12(b)(3) ....................................................................1, 2, 5, 10, 12

Federal Rule of Civil Procedure 12(b)(6) .............................................................................1, 5, 12

Defendant Hat World, Inc. ("Hat World") files this motion to dismiss under Federal Rules of Civil Procedure 12(b)(6) and 12(b)(3).

## I.     INTRODUCTION

Plaintiff Vindolor, LLC ("Vindolor") fails to plausibly state a claim for relief against Hat World for a simple reason: infringement of the patent-in-suit would require use of its *customer's* phones by Hat World, something it does not do and never has.

Vindolor alleges that Hat World infringed U.S. Patent No. 6,213,391 ("the '391 Patent") before it expired in September 2017. The Complaint identifies certain phones, configured with certain software and which are enabled to read fingerprints, as the "Accused Infringing Devices." Vindolor *does not* allege that any Hat World hardware or software constituted any portion of the claimed system, much less that Hat World made or sold the accused phones. Instead, Vindolor implausibly alleges that Hat World directly infringed the '391 Patent when *its customers* used *their* phones to make purchases.

Neither fact nor law support Vindolor's infringement claim here. The patent statute imposes direct infringement liability on anyone who "makes, uses, offers to sell, or sells any patented invention." 35 U.S.C. § 271(a). Controlling Federal Circuit precedent confirms that Hat World itself did not "use" the purported invention because it neither "put the invention into service" nor benefited from "each and every element of the claimed system." *Centillion Data Sys., LLC v. Qwest Commc'ns Int'l, Inc.*, 631 F.3d 1279, 1284 (Fed. Cir. 2011); *Intellectual Ventures I LLC v. Motorola Mobility LLC*, 870 F.3d 1320, 1329 (Fed. Cir. 2017) (citing *Centillion*, 631 F.3d at 1284). Vindolor's claim for direct infringement, which is based solely on Hat World's customers' use of their phones, should be dismissed.

Assuming Vindolor's claims based on Hat World's customers' use of their phones are dismissed, Vindolor's only remaining allegations concern alleged pre-expiration testing by Hat

1

World of the accused "portable identification systems in the United States." Dkt. No. 1, ¶ 67; *see also id*. ¶¶ 69-70. Any such remaining claim must be dismissed for lack of proper venue under Federal Rule of Civil Procedure 12(b)(3). Venue in a patent case is only appropriate "where the defendant resides, or where the defendant has committed acts of infringement and has a regular and established place of business." 28 U.S.C. § 1400(b). Hat World neither "resides" in the Eastern District of Texas, nor did it "test" any accused phones within the district. Vindolor's Complaint does not allege otherwise. Further still, damages, if any, for the alleged "testing" would be *de minimis* even in Vindolor's best case scenario. For these additional reasons, Vindolor's Complaint should be dismissed.

## II.     STATEMENT OF ISSUES

1.  Whether Vindolor's claim of direct infringement should be dismissed under Rule 12(b)(6) for failing to state a claim upon which relief can be granted because Hat World does not "use" the claimed invention.

2.  Whether any remaining claim of infringement based on alleged "testing" should be dismissed under Rule 12(b)(3) for improper venue because Hat World does not reside and has not performed any testing in this District.

## III.    STATEMENT OF FACTS

The Complaint alleges that Hat World infringed the '391 Patent, which expired on September 10, 2017. Dkt. No. 1. The '391 Patent is directed to a portable identification system based on a distinctive biometric characteristic, "e.g., fingerprint, DNA, palm print, retina scan, etc." *See* Dkt. No. 1, Ex. A ('391 Patent), Abstract, 3:47-58. Claim 1 recites a "portable identification system" comprising five components, "[1] a storage medium . . . [2] one or more inputs; [3] one or more outputs; [4] a verifying means . . . and [5] a code generator." *Id.* at claim 1.

Vindolor's Complaint alleges that each of the five components of the claimed system are found in certain phones and mobile devices with particular software installed and configured by the user. The Complaint identifies the "Accused Infringing Devices" as:

(a)     Window based phones and devices . . . installed with the Microsoft Wallet App;

(b)     Android based phones and mobile devices . . . installed with the Paypal Mobile App, the Wells Fargo Wallet App, the Masterpass App, the Google App, the Android Pay App, the Google Pay App, or the Samsung Pay app; and

(c)     Apple based phones and mobile devices . . . installed with the Paypal Mobile App, the Apple Wallet, or the Apple Pay App."

Dkt. No. 1, ¶¶ 67-68. The Complaint does not allege that any *Hat World* hardware or software constitutes any part of the claimed invention. *See id.* at ¶¶ 77-112 (referring only to hardware or software provided by parties other than Hat World). Vindolor instead implausibly alleges that Hat World used the accused phones when *its customers* used their phones to make purchases at Hat World stores. Dkt. No. 10, ¶¶ 75-78; 124. In particular, Vindolor alleges that Hat World's customers configured and enabled third-party payment software on their phones, such as Apple Pay or Google Pay. *Id.* at ¶¶ 85, 100 (alleging that the phone stores the customer's "enrolled fingerprint data and payment information" and that the "user registers a credit card" associated with the phone). Vindolor also alleges that Hat World's customers used that software in their phones to initiate and complete near-field communication ("NFC") or contactless payments. *Id.* at ¶¶ 66, 91. Vindolor further alleges that customers who opt to use their phones to initiate payment place their phones near an NFC-enabled terminal and authenticate their identities using, for example, the phone's fingerprint scanner to authorize the transaction. *Id.* at ¶ 91 ("NFC is an

industry-standard contactless technology designed to work only across short distances. If your iPhone is on and it detects an NFC field, it will present you with your default card."); ¶ 95 ("When a user makes a purchase with Apple Pay using the iPhone 6, the user can use Touch ID to authorize the purchase."); ¶ 98 ("If there is a match . . . the Secure Enclave authorizes the Apple Pay transaction."). The Complaint does not allege—and cannot plausibly allege—that Hat World required its customers to pay using the "Accused Infringing Devices" in lieu of cash or credit card options. *See, e.g.*, *id.* at ¶¶ 64-72, 124.

The '391 Patent makes no reference to any type of NFC payment technology that forms the centerpiece of Vindolor's infringement theory against Hat World. Likewise, the only two claims of the '391 Patent do not recite any interaction with a point-of-sale terminal, let alone an NFC-enabled terminal. That is precisely why the Complaint only identifies certain mobile phones as the "Accused Infringing Devices," rather than point-of-sale terminals themselves.

## IV.   LEGAL STANDARDS

### A.   Failure to State a Claim

"[A] pleading must contain a 'short and plain statement of the claim showing that the pleader is entitled to relief.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 677-78 (2009) (quoting Fed. R. Civ. P. 8(a)(2)). That obligation "requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (citations omitted). "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 570). "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Id.*

### B.   Improper Venue

Under § 1400(b), venue in a patent case is only proper (1) "in the judicial district where

the defendant resides" or (2) in a district "where the defendant has committed acts of infringement and has a regular and established place of business." If venue is improper, a defendant may move to dismiss the case. Fed. R. Civ. P. 12(b)(3); 28 U.S.C. § 1406(a). Under Rule 12(b)(3), courts may consider "evidence in the record beyond simply those facts alleged in the complaint and its proper attachments." *Ginter ex rel. Ballard v. Belcher, Prendergast & Laporte*, 536 F.3d 439, 449 (5th Cir. 2008) (internal citations omitted); *Snyders Heart Valve LLC v. St. Jude Med. S.C., Inc.*, No. 4:16-CV-00812, 2018 WL 3099709, at *3 (E.D. Tex. June 25, 2018) (". . . Defendants are permitted to submit any evidence available in support of a motion to dismiss for improper venue."). "[U]pon motion by the Defendant challenging venue in a patent case, the Plaintiff bears the burden of establishing proper venue." *In re ZTE (USA) Inc.*, 890 F.3d 1008, 1013 (Fed. Cir. 2018).

## V.    VINDOLOR CANNOT PLAUSIBLY ALLEGE DIRECT INFRINGEMENT.

Vindolor's Complaint against Hat World should be dismissed because it "fail[s] to state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6). In particular, Vindolor's Complaint does not, and cannot, state a claim for direct infringement by Hat World under 35 U.S.C. § 271(a), which requires that Hat World "put the invention into service" and "benefit from each and every element of the claimed system." *Centillion*, 631 F.3d at 1284; *Intellectual Ventures I*, 870 F.3d at 1329 (internal quotation marks omitted).

### A.    "Use" Requires Vindolor to Prove that Hat World Both "Put the Invention into Service" and "Benefit[ted] from Each and Every Element of the Claim[s]."

Vindolor's Complaint alleges that Hat World directly infringed the '391 Patent when it allegedly "used" its *customers'* phones when those customers used their phones to pay for

purchases at Hat World stores.[1] Dkt. No. 1, ¶¶ 67-68. In the context of the system claimed by the '391 Patent, there are at least two essential elements of such "use" that Vindolor cannot plausibly allege.

First, Vindolor must establish that Hat World "put the invention [of the '391 Patent] into service." *Centillion*, 631 F.3d at 1284 ("[T]o 'use' a system for the purposes of infringement, a party must put the invention into service."). To do so, Hat World must "control" the claimed system, such that it has "the ability to place the system as a whole into service" as well as "use each and every element of [the] claimed [system]." *Id.*

Second, Vindolor must establish that Hat World "benefit[ted] from each and every element of the claimed system." *Intellectual Ventures I*, 870 F.3d at 1329 ("[P]roof of an infringing 'use' of the claimed system under § 271(a) requires the patentee to demonstrate that the direct infringer obtained 'benefit' from each and every element of the claimed system.") (citing *Centillion*, 631 F.3d at 1284). A general benefit from the "system as a whole" does not suffice. *Intellectual Ventures I*, 870 F.3d at 1329. Further, the alleged benefits "should be tangible, not speculative, and tethered to the claims." *Grecia v. McDonald's Corp.*, No. 2017-1672, 2018 WL 1172580, *4 (Fed. Cir. Mar. 6, 2018).

### B.     Vindolor's Complaint Does Not Plausibly Allege that Hat World "Put the Claimed System into Service"

Vindolor's "use" claim against Hat World fails in the first instance because Vindolor cannot plausibly allege that Hat World "put the invention into service." *Centillion*, 631 F.3d at

---

[1] Vindolor alleges only direct infringement under 35 U.S.C. § 271(a); that is, that Hat World *itself* used the system claimed in the '391 Patent.  Because the '391 Patent expired before Vindolor filed this lawsuit, Vindolor cannot allege *indirect* infringement under 35 U.S.C. § 271(b) or (c) because it requires knowledge of the asserted patent at the time of alleged infringement.  *See Global-Tech Appliances, Inc. v. SEB S.A.*, 563 U.S. 754, 763, 766 (2011). Vindolor does not allege pre-expiration knowledge of the '391 Patent.

1284. Vindolor's Complaint alleges that the "Accused Infringing Devices" are phones and mobile devices manufactured by third parties and configured by Hat World's customers. Dkt. No. 10, ¶¶ 67-68, 85, 100. Any "use" of these phones is initiated by and controlled by customers who use their phones to pay for transactions, not by Hat World.

Here, Hat World could not have "put the claimed system into service" because it did not "control" the claimed system such that it had "the ability to place the system as a whole into service." *Centillion*, 631 F.3d at 1284. As pleaded by Vindolor, the '391 Patent purports to claim phones and mobile devices provided by third parties and used by customers, rather than any hardware or software provided by Hat World. Dkt. No. 1, ¶¶ 67-68; 77-112. As the Complaint concedes, the *customer*—not Hat World—would make the decision to use a mobile phone to initiate payment authorization. *See, e.g.*, *id.* ¶ 91. Moreover, to authorize the payment, customers—not Hat World—could authenticate their identities using their phone's fingerprint scanner (if any). *Id.* at ¶¶ 95-99. Thus, the customers alone control the "Accused Infringing Device" (*i.e.*, mobile phone used to initiate payment), not Hat World.[2]

Furthermore, Hat World did not "use each and every . . . element of [the] claimed

---

[2] Vindolor tries to backstop its allegations that Hat World "used" its *customers'* phones by alleging that Hat World "directed and controlled" its customers' use of their phones.  Dkt. No. 1, ¶ 124.  That theory fails just the same because the  customer  decides whether or not, and how, to configure payment software on its phone and then use the phone to make a purchase. Vindolor does not allege that Hat World ever required its customers to configure their phones to use biometric identification. Nor does Vindolor allege that Hat World ever required its customers to pay for purchases using the "Accused Infringing Devices" rather than alternative payment methods like cash or credit card.  *See Centillion*, 631 F.3d at 1287 ("Following our vicarious liability precedents, we  conclude,  as  a  matter  of  law,  that  [defendant]  is  not  vicariously liable  for  the  actions  of  its  customers. [Defendant] in no way directs its customers to perform nor do its customers act as its  agents . . . .  [I]t is entirely the decision of the customer whether to install and operate this software  on its personal computer data processing means.").  Similarly, Vindolor cannot allege a "joint enterprise" between Hat World and its customers  because there is no agreement, no common purpose, no community of pecuniary interest, and no equal right of control between them.  *See Akamai Techs. Inc. v.  Limelight Networks, Inc.*, 797 F.3d 1020, 1023 (Fed. Cir. 2015) (*en banc*).

[system] as is also required to "put the invention into service." *Centillion*, 631 F.3d at 1284. The claims of the '391 Patent require five elements: "[1] a storage medium . . . [2] one or more inputs; [3] one or more outputs; [4] a verifying means . . . and [5] a code generator." The Complaint does not allege that any Hat World hardware or software constitute any of these claim elements. Dkt. No. 1, ¶¶ 77-112. Nor does the Complaint plausibly allege that Hat World uses each recited element of the claimed system. Rather, Vindolor alleges in vague and conclusory fashion that Hat World "benefited from the use" or "controlled the use" of the claimed elements. *See, e.g., id.* at ¶ 156 ("Defendant benefited from the use of the verifying means"), ¶ 163 ("Defendant controlled the use of the verifying means"). Such boilerplate recitation is not sufficient to plausibly establish receipt of a "benefit" here, much less Hat World's "use" of its customer's phones. *See Twombly*, 550 U.S. at 555; *Iqbal*, 556 U.S. at 678.

The Federal Circuit's decision in *Centillion* is on point. There, the Federal Circuit considered whether defendant Qwest directly infringed by "using" an accused billing system with two components: a back-end processing system operated by Qwest, and a front-end client application installed on a user's personal computer. *Centillion*, 631 F.3d at 1281. Although Qwest operated the back-end half of the claimed system, the Federal Circuit determined that Qwest did not "use" the claimed system because it "never put[] into service the personal computer data processing means," *i.e.*, the front-end application.[3] *Id.* at 1286. The Federal Circuit explained that the *customer*, not Qwest, put the system as a whole into service, because "the customer controls the system," and but for the customer's actions, "the back-end processing would not be put into service." *Id.* at 1285. Likewise here, Hat World's customers controlled

---

[3] *Centillion* actually presents a much closer case, because Qwest operated part of the claimed system and provided the front-end client application for the user to install.  Here, by contrast, Vindolor does not allege that Hat World provides or operates any part of the claimed system (nor can it plausibly do so).

their accused mobile phones; but for *their* decision to use those phones to initiate payment and to authenticate their identities using their fingerprints (as opposed to paying with cash or credit card), the allegedly infringing system would not have been put into service. Accordingly, Vindolor has failed to plausibly allege that Hat World "put the claimed system into service."

### C.   Vindolor's Complaint Fails to Plausibly Allege that Hat World Benefitted from Each and Every Element of the Claimed System.

Hat World also did not "benefit from each and every element of the claimed system." *Intellectual Ventures I*, 870 F.3d at 1329 (internal quotations omitted). Rather than pleading the requisite "tangible" benefits "tethered to the claims," Vindolor offers no more than a "recitation of general benefits" which are insufficient to establish "use" here. *Grecia*, 2018 WL 1172580, at *4.

The Complaint identifies a list of generalized "benefits" of the Accused Infringing Devices (that is, customers' phones) as a whole, which it collectively calls "the Asserted Benefits." Dkt. No. 1, ¶ 127. The Complaint then alleges that Hat World realized those same nonspecific "Asserted Benefits" for each claim element. *See id.* at ¶¶ 130, 138, 144, 152, 161, 168. For example, while purporting to identify benefits relating to the second claim element ("one or more inputs"), the Complaint alleges that "[w]ith the use of one or more inputs in the Accused Infringing Devices, the Defendant was able to prevent a fraudulent sales transaction." *Id.* at ¶ 143. Of course, the "one or more inputs" do not prevent fraudulent sales transactions (nor does the Complaint explain how they would) and do not confer any benefits to *Hat World* apart from those alleged with respect to the accused system as a whole.

The Federal Circuit has rejected this precise approach and found it insufficient to sustain an allegation of "use." In *Grecia,* the asserted patent claimed a system for authorizing access to digital content. 2018 WL 1172580, at *1. Plaintiff Grecia asserted that defendant McDonald's Corp. would benefit from the claimed system by being able to associate subsequent customer

9

purchases and trigger indemnity obligations in fraudulent transactions. *Id.* at \*4. But the Federal Circuit considered those "benefits" to be inadequate "recitation of general benefits," equivalent to "stating that [the defendant] benefits from the claimed system as a whole." *Id.* And with only general benefits asserted, the Federal Circuit held that the plaintiff "fail[ed] to plausibly allege that [the defendant] obtained a benefit from each and every claim element." *Id.* at \*3. The same facts present themselves here, and the same result should follow.

Because Vindolor can neither prove that Hat World "put the claimed system into service" nor "benefitted from each and every element" thereof, Vindolor cannot prove direct infringement based on "use" of the purported invention claimed in the '391 Patent. The Complaint should be dismissed.

## VI. VINDOLOR CANNOT MAINTAIN THIS LAWSUIT BASED ON ALLEGED "TESTING" BY HAT WORLD

To the extent Vindolor contends Hat World infringed one or both claims of the '391 Patent through "testing" that allegedly occurred prior to the patent's expiration, any such remaining claims in Complaint must additionally be dismissed for improper venue pursuant to Fed. R. Civ. P. 12(b)(3).

In patent cases, venue is governed exclusively by 28 U.S.C. § 1400(b). *See TC Heartland v. Kraft Foods Group Brands LLC*, 137 S. Ct. 1514, 1516 (2017). The statute provides that "[a]ny civil action for patent infringement may be brought in the judicial district where the defendant resides, or where the defendant has committed acts of infringement and has a regular and established place of business." 28 U.S.C. § 1400(b).

For purposes of the patent venue statute, a domestic corporation "resides" in the state where it is incorporated. *TC Heartland*, 137 S. Ct. at 1517, 1521; 28 U.S.C. § 1400(b). As Vindolor itself admits, Hat World is a Minnesota company and thus does not "reside" in Texas within the meaning of the statute. Dkt. No. 1, ¶ 2. Venue would be appropriate in the Eastern

District only if Hat World "committed acts of infringement" within the District. 28 U.S.C. § 1400(b). But Vindolor does not even allege that Hat World performed any "testing" of the Accused Infringing Devices in the Eastern District of Texas; indeed, it generally alleges that such testing occurred "in the United States." Dkt. No. 1, ¶ 67. That allegation is insufficient to establish venue in the Eastern District of Texas as to any "testing"-based infringement theory. Moreover, Hat World *has not* tested any Accused Infringing Devices within the district, and any amendment of pleadings on this issue would be a futile effort. Hat World's testing of payments using mobile devices at NFC-enabled point-of-sale terminals has been very limited and has only occurred in Indiana. Exhibit A (Thompson Decl.), ¶¶ 3-4.  Hat World has never performed any testing of mobile payment functionality in Texas. *Id*. at ¶ 5.

A finding of improper venue is appropriate where a court partially dismisses infringement allegations, leaving only allegations of infringement based on activities outside of the judicial district. For example, this Court recently dismissed allegations regarding "ten sales that took place in the Eastern District of Texas, leaving only allegations of infringement that took place outside this District." *Snyders Heart Valve LLC*, No. 4:16-CV-00812, 2018 WL 3099709, at *6-7 (E.D. Tex. June 25, 2018). The Court held that "there are no remaining activities or uses in this District, and, as such, there is no 'act of infringement' to make venue proper in the Eastern District of Texas." *Id*. at *7. Here, the Court should similarly find improper venue based on any residual claims by Vindolor of infringement based on testing, which occurred only outside of this District.

Dismissal of any testing-based infringement theory is further appropriate here to conserve this Court's limited resources, because Vindolor could at best prove *de minimis* damages, if any at all, with respect to Hat World's testing. Vindolor does not plead how Hat World profited (or could profit) in any way from very limited testing of a mobile phone to determine whether it

worked to initiate payment at an NFC-enabled point-of-sale terminal. In such a circumstance, Hat World could not have made any actual sale of goods, as it would merely have simulated a transaction to determine the functionality of a phone. Moreover, none of the alleged benefits of the invention identified by Vindolor in its Complaint relate to any testing by Hat World. Any attenuated claim for damages based on testing by Hat World "does not justify or support the use of this Court's limited resources." *Babbage Holdings, LLC v. Activision Blizzard, Inc.*, 2:13-CV-750, 2014 WL 2115616, at *2 (E.D. Tex. May 15, 2014) (dismissing infringement claim under Fed. R. Civ. P. 12(b)(6) where, among other things, "damages, if any, [were] *de minimis* on their face").

## VII.   CONCLUSION

For the foregoing reasons, Hat World respectfully requests that the Court dismiss Vindolor's Complaint under Federal Rules of Civil Procedure 12(b)(6) and 12(b)(3).

June 28, 2018                                         Respectfully submitted,

                                                     KILPATRICK TOWNSEND & STOCKTON LLP


                                                     By:   */s/ David A. Reed*
                                                           Vaibhav P. Kadaba (Georgia Bar No. 405727)
                                                             wkadaba@kilpatricktownsend.com
                                                           David A. Reed (Georgia Bar No. 185146)
                                                             dreed@kilpatricktownsend.com
                                                           1100 Peachtree Street NE, Suite 2800
                                                           Atlanta, GA 30309-4528
                                                           Telephone:  404-815-6500
                                                           Facsimile:   404-815-6555

William E. Mosley (California Bar No. 280495)
  wmosley@kilpatricktownsend.com
1080 Marsh Road
Menlo Park, CA 94025
Telephone:  650-326-2400
Facsimile:   650-326-2422

*Counsel for Defendant*
*Hat World, Inc.*

## CERTIFICATE OF SERVICE

The undersigned hereby certifies that all counsel of record who are deemed to have consented to electronic service are being served with a copy of the foregoing on June 28, 2018, via the Court's CM/ECF system.

*/s/ David A. Reed*
David A. Reed

*Counsel for Defendant*
*Hat World, Inc.*

14